Lyon, Special J.,
delivered the opinion of the court.
On the trial of this action of ejectment in the circuit court of Grainger county, there was a verdict and judgment for the plaintiff below; to revise which, the defendant has prose* cuted an appeal to this court, in the nature of a writ of error. *125 In deraigning his title to the land in controversy, the lessor of the plaintiff produced and read to the jury a grant from the State of North Carolina to John Coulter for four hundred acres of land, dated 29th July, 1793; a deed from John Coulter to Jenkin Whitesides, dated 1st of November, 1807, for the same land, and an instrument of writing signed and sealed by the said Jenkin and Thomas Whitesides, dated the 22d of February, 1820. To this writing there were no subscribing witnesses, and on the trial it was proved in common law form by the testimony of witnesses who deposed to the hand-writing of the parties subscribing it. To the reading of this paper, the defendant objected, but the objection was overruled by the circuit court.
To sustain this verdict and judgment, several positions have been assumed and argued with ingenuity and earnestness; but as we are of opinion that the case will depend upon the legal effect of the instrument of writing of the 22d of February, 1820, signed by the two Whitesides, we do not at this time deem it necessary to discuss other points in the record. This article is follows :
“Articles between J. Whitesides of Davidson county, of the one part, and Thos. Whitesides of Grainger county, ofthe other part, both of Tennessee, witnesseth; that the said J. White-sides has this day sold to said Thomas, all the lands which he holds or claims, including and adjoining Bean’s Station in said Grainger county, the land adjoining Oresville, on both sides of German Creek, and the lands between the forks of said Creek, which he, said J. Whitesides, purchased from Robert King and John Coulter, including where a saw mill stood on said Creek, supposed to contain about fifteen hundred acres, more or less, with all the buildings, hereditaments and appurtenances thereto belonging, and one negro man slave, a blacksmith, named Daniel, which has been conveyed by bill of sale of this date.” The instrument then proceeds to specify the amount of the *126 purchase money and the mode and terms of payment to be made by Thomas Whitesides, and proceeds as follows : “And said J. Whitesides for himself, his heirs, &c., hereby covenants to convey so much of said lands as he holds the legal title for, to said Thomas, his heirs or assigns', before the first day of April next, the tract including the Station, supposed about 300 acres, with general warrantee, and the residue with special warrantee, and that he will procure William Whitesides to convey such parts of said lands as he holds the legal title for, to said Thomas, his heirs, &c., before the first day of August next, with special warrantee.”
It does not appear from the record that any further acts were done by the parties to perfect this contract. Thomas Whitesides took possession of the lands around and including Bean’s Station, mentioned in the article immediately after its execution, and continued in the uninterrupted adverse possession thereof to the bringing of this suit, and so far asserted his claim to the Coulter tract, a part of which forms the subject matter of this controversy, as to cut and haul timber occasionally from it.
It is now insisted by the counsel for the lessor of the plaintiff, that by this article the actual title to the land passed from Jenkin Whitesides to him as an operative and effectual conveyance, and vested in him immedia) ely on its execution, a present legal title to all the land mentioned in it. The stress of the argument is mainly predicated on the word “ sold,” which occurs in the 2d clause of this article, which, it is insisted, operated to pass the entire estate from the one to the other contracting party. We cannot yield our assent to this construction, nor to the soundness of the argument by which it is supported. We hold, that by this contract, Thomas White-sides acquired only an eciuitable estate in the lands mentioned in it. It is in truth but an ordinary bond for the conveyance of title, in which the terms of the contract of sale are *127 recited. The parties themselves so understood it and expressly stipulated that a conveyance of title shall be made at a future day. It is acknowledged in the instrument that to a portion of these lands thus “ sold,” Jenkin Whitesides had not the legal title, and then obliges himself by a given time to procure a conveyance of the legal title to Thomas Whitesides from a third party. With what propriety then can it be contended that he conveyed lands, the title to which he acknowledges in the«same instrument to be in a third party? A contract of sale is one thing, and the conveyance of title, quite another, and the one may be and is frequently complete without the other. The word “ sold ” occurring in this instrument is barely evidence that the contract of sale was complete, and is not susceptible of any additional meaning. It may be safely asserted, that all title bonds in which a contract of sale is recited, must necessarily emploj^ this or words of similar import, and the conclusion is hence inevitable on the construction contended for, that all such bonds would support an action of ejectment.
The circuit court refused to take this paper from the jury, and in his instructions to them said: “ The court is of opinion that it is not a regular deed of conveyance for land, as it does not purport to convey a title in fee simple to Thomas Whitesides, for the words heirs and assigns are notfound in the first part of the instrument, and are not found until Jenkin Whitesides covenants to convey to Thomas Whitesides, his heirs and assigns. This instrument the court believes authorizes Thomas Whitesides to enter upon, possess and enjoy the land covered by it, and estops Jenkin Whitesides and his heirs from claiming the land or disturbing his possession of it.” This charge, to say the least of it, is manifestly incomplete, and must have left an erroneous impression on the mind of the jury. His Honor, the circuit judge, was correct in saying that it was not “ a regular deed of conveyance,” but *128 not for the reason assigned. He should have instructed the jury that it conveyed only an equitable interest to Thomas Whitesides, and that while it was a good defensive title, coupled with the necessary possession in virtue of the act of 1819, yet conveying only an equitable title, it would not enable the lessor of the plaintiff to recover land held adversely. As one of the evidences of possession in the lessor of the plaintiff, it was properly admissible, but not as a title to support the action.
For these reasons, the judgment must be reversed, and the case remanded to the circuit court of Grainger for a new trial.